**Entered on Docket**
**October 29, 2010**

_____
**Hon. Mike K. Nakagawa**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re: ) | Case No. 10-18827-MKN |
| ) | |
| R & S ST. ROSE, LLC, ) | Chapter 7 |
| ) | |
| Alleged Debtor. ) | Date: June 23, 2010 |
| ) | Time: 9:30 a.m. |

**MEMORANDUM DECISION ON MOTION TO DISMISS[1]**

Branch Banking & Trust Corp. ("BB&T") filed an involuntary chapter 7 petition against Alleged Debtor R&S St. Rose, LLC. In response, the Alleged Debtor, along with interested parties Forouzan, Inc.; RPN, LLC; Saiid Forouzan Rad; and Phillip Nourafchan filed a Motion to Dismiss Involuntary Petition. A hearing on the motion was held on June 23, 2010. After oral arguments were presented, the matter was taken under submission.

**BACKGROUND**

The dispute in this matter arose from a real estate transaction involving certain real property located in Clark County, Nevada. The transaction spawned two related civil proceedings commenced in the Eighth Judicial District Court for the State of Nevada, Clark County ("State Court"). The dispute currently is before this court as a result of an involuntary bankruptcy petition

---

[1] In the text and footnotes of this memorandum, all references to "Section" shall be to provisions of the Bankruptcy Code appearing in Title 11 of the United States Code unless otherwise indicated. All references to "Rule" shall be to provisions of the Federal Rules of Bankruptcy Procedure unless otherwise indicated. All references to the "Code" are to the Bankruptcy Code.

filed by BB&T, the unsuccessful party in the State Court proceedings.

**The Real Property Transaction**

In August 2005, R&S St. Rose, LLC ("Alleged Debtor") was formed for the sole purpose of land banking thirty-eight acres of real property located at St. Rose Parkway and Spencer Road in Henderson, Nevada (the "Property"). The original purpose behind this venture was to purchase the Property, and within one year, to sell it to Centex Homes ("Centex"). The Alleged Debtor has two managing members: Forouzan, Inc. ("Forouzan") and RPN, LLC ("RPN"). Saiid Forouzan Rad ("Rad") is the president and owner of Forouzan. Phillip Nourafchan ("Nourafchan") is the owner and manager of RPN.

On August 26, 2005, the Alleged Debtor purchased the Property for $45,131,414.11. The Alleged Debtor's funding for the purchase had three sources: (1) a loan from Colonial Bank, N.A. ("Colonial Bank"); (2) non-refundable deposits from Centex; and (3) a loan from R&S St. Rose Lenders, LLC ("St. Rose Lenders")[2]. Specifically, the funding consisted of a $29,305,250 loan from Colonial Bank ("29M Loan"), $8,100,000 in non-refundable deposits from Centex ("8M Non-Refundable Deposit"), and a $12,000,000 loan from St. Rose Lenders ("12M Loan"). Both the 29M Loan and 12M Loan were evidenced by separate promissory notes and deeds of trust against the Property. The 29M Loan was secured by a first deed of trust in favor of Colonial Bank, while the 12M Loan was secured by a second deed of trust in favor of St. Rose Lenders. Both deeds of trust were recorded.

In August 2006, Centex decided not to exercise its option to purchase the Property, and consequently forfeited the 8M Non-Refundable Deposit. In March 2007, the Alleged Debtor and Colonial Bank modified the terms of the 29M Loan, extending its maturity date.

Sometime in late May/early June 2007, the Alleged Debtor and Colonial Bank entered into discussions to provide the Alleged Debtor an additional loan for construction of improvements on

---

[2] St. Rose Lenders is managed by Forouzan and RPN, and was formed to provide the Alleged Debtor with funds borrowed from individual investors.

the Property. On July 27, 2007, the Alleged Debtor and Colonial Bank entered into a new and separate agreement that solidified this new loan for $43,980,000 ("Construction Loan"). This loan was evidenced by an agreement, promissory note and deed of trust against the Property in favor of Colonial Bank. Simultaneously, the 29M Loan was paid off, and a reconveyance on the 29M Loan was executed and recorded. The deed of trust on the Construction Loan was recorded on July 31, 2007.

Thereafter, the Alleged Debtor defaulted on the Construction Loan. On April 28, 2009, Colonial Bank recorded a Notice of Default and Election to Sell for failure to pay on the promissory note.

**The State Court Litigation**

On November 3, 2008, two individual lenders of the 12M Loan ("Plaintiffs Murdock and Keach") filed suit against Rad, Nourafchan, Forouzan, RPN, St. Rose Lenders and the Alleged Debtor in the State Court.[3] Shortly thereafter, the plaintiffs amended the complaint to add Colonial Bancgroup, Inc. and R&S Investment Group, LLC ("R&S Investment"). Forouzan and RPN are the managers and members of R&S Investment.

On July 1, 2009, Colonial Bank filed a separate suit against Rad, Nourafchan, Forouzan, RPN, St. Rose Lenders, R&S Investment and the Alleged Debtor ("Colonial Litigation Defendants"),[4] asserting that the deed of trust recorded against the Construction Loan had priority over the deed of trust recorded against the 12M Loan. On October 7, 2009, BB&T filed an amended complaint in the case, asserting it was the successor in interest to the Federal Deposit

---

[3] That proceeding is denominated Case No. A574852 and is pending in Dept. XI of the State Court.

[4] That proceeding is denominated Case No. 09-A-59412-C and also is pending in Dept. XI of the State Court.

Insurance Corporation ("FDIC"), as receiver for Colonial Bank.[5] Additionally, BB&T added claims against the defendants based on contractual subrogation, equitable subrogation, replacement, equitable/promissory estoppel, unjust enrichment, misrepresentation and civil conspiracy in connection with the priority claim. St. Rose Lenders subsequently filed a counterclaim seeking priority on the deed of trust on the 12M Loan. On October 22, 2009, the State Court consolidated all of the actions under one case.

At the request of both St. Rose Lenders and BB&T, the State Court entered a temporary restraining order, precluding either one of them from attempting to foreclose on the Property during the pendency of the litigation. The trial commenced on January 8, 2010, and because of scheduling issues, spanned ten days over a four month period. At the conclusion of the trial, Plaintiffs Murdock and Keach and the Colonial Litigation Defendants jointly moved under Rule 52 of the Nevada Rules of Civil Procedure for the State Court to determine whether BB&T had met its evidentiary burden of demonstrating that it received an effective assignment or transfer of Colonial Bank's interest in the Construction Loan. In response, BB&T requested that the FDIC be permitted to substitute into the State Court proceeding as the real party in interest. Briefs were filed and the State Court conducted a hearing on the matters on April 13 and 14, 2010.

According to the transcript of the hearings[6], the State Court denied BB&T's request to substitute the FDIC as the real party in interest on April 13, 2010. The following day, the State Court also granted the Rule 52 request. It concluded that since it could not determine whether the interest in the Construction Loan was included or excluded from the Agreement, BB&T had failed

---

[5] The FDIC became receiver for Colonial Bank, following the latter's collapse in August 2009. Apparently, FDIC and BB&T then entered into an agreement for BB&T's purchase of a majority of Colonial Bank's assets.

[6] Copies of the transcripts of the hearings conducted by the State Court on April 13, 2010 and April 14, 2010 are attached as Exhibits "5" and "6" to the initial declaration of Richard F. Holley filed in support of the Dismissal Motion.

4

to meet its evidentiary burden to show that it had acquired the interest in the Construction Loan.[7] Plaintiffs' counsel was directed to prepare findings of fact and conclusions of law on the Rule 52 request.[8]

**The Involuntary Bankruptcy**

On May 13, 2010, BB&T filed an involuntary Chapter 7 petition on the Alleged Debtor, pursuant to Section 303. (Dkt# 1).[9] Under Section 362(a), the filing of the involuntary petition triggered the automatic stay in bankruptcy, preventing the St. Rose Lenders from proceeding to foreclosure on the Property.[10] An involuntary summons was issued on May 18, 2010, and notices of appearance were filed by Rad, Nourafchan, Forouzan and RPN.

On May 25, 2010, the Alleged Debtor, along with interested parties Forouzan, RPN, Rad, and Nourafchan (collectively "Movants") filed a Motion to Dismiss Involuntary Petition ("Dismissal Motion") (Dkt# 9). The motion is accompanied and supported by the Declarations of Saiid Forouzan Rad (Dkt# 10) and Richard F. Holley, Esq. (Dkt# 11). BB&T filed an opposition to the motion ("BB&T Opp")(Dkt# 17) accompanied by the Declaration of Aaron B. Shumway, Esq.

---

[7] During the trial, BB&T had provided to the State Court a copy of a Purchase and Assumption Agreement entered into between the FDIC and BB&T to purchase Colonial Bank's assets ("Agreement"). The State Court noted, however, that the Agreement excluded specific assets from the purchase pursuant to two attached schedules. BB&T argued that those schedules were never prepared or attached. The State Court also noted that the Agreement made reference to assets that were the subject to a claim or legal proceeding, which were excluded from BB&T's purchase.

[8] In addition, the State Court found that the deed of trust on the 12M Loan had first priority against the Property, and thereby, over the deed of trust on the Construction Loan. Accordingly, the State Court dissolved the temporary restraining order on the Property and advised that St. Rose Lenders could proceed with foreclosure on the Property.

[9] "Dkt#" refers to the number assigned to the document filed with the court in the case and which appears on the docket maintained by the clerk.

[10] At the April 14, 2010 hearing, the State Court indicated its intention to dissolve the temporary restraining order or to allow it to expire. That order otherwise would have prevented St, Rose Lenders from foreclosing on the Property. At a hearing conducted on May 4, 2010, the State Court denied BB&T's further request to stay any foreclosure of the Property pending appeal.

(Dkt# 18). Movants filed a written reply ("Reply") (Dkt# 21) along with a Supplemental Declaration of Richard F. Holley, Esq. (Dkt# 22), and a Second Supplemental Declaration of Richard F. Holley, Esq. (Dkt# 24). A "joinder" in the Dismissal Motion was filed on behalf of the St. Rose Lenders. (Dkt# 25)

A hearing on the Dismissal Motion was conducted on June 23, 2010, with appearances of counsel noted on the record. Thereafter, the matter was taken under submission.

On the same day the hearing on the Dismissal Motion was conducted, the State Court entered its Findings of Fact and Conclusions of Law ("FFCL") that had been prepared by counsel. It concluded that because it could not determine whether the interest in the Construction Loan was included or excluded from BB&T's agreement with the FDIC, BB&T had failed to meet its burden to show that it had acquired the interest in the Construction Loan. In addition, the State Court found that the deed of trust on the 12M Loan had priority over the deed of trust on the Construction Loan. Accordingly, the State Court dissolved the temporary restraining order on the Property and advised that St. Rose Lenders could proceed with foreclosure on the Property.[11]

After the hearing on the Dismissal Motion, the Movants filed a Third Supplemental Declaration of Richard F. Holley, Esq. (Dkt# 27) and a Fourth Supplemental Declaration of Richard F. Holley, Esq. (Dkt# 31). BB&T filed a Supplemental Declaration of Aaron B. Shumway, Esq. ("Supplemental Shumway Declaration") in support of its Opposition (Dkt# 29) as well as a Second Supplemental Declaration of Aaron B. Shumway, Esq. (Dkt #33). Movants then filed a Response to Second Supplemental Declaration of Aaron B. Shumway, Esq. (Dkt# 35). Except for the Supplemental Shumway Declaration, none of the additional declarations and responses were

---

[11] In footnote 1 of its FFCL, the State Court acknowledged the automatic stay with respect to the Alleged Debtor and indicated that its orders would not be effective against the Alleged Debtor until relief from the automatic stay is obtained or the involuntary bankruptcy case is dismissed. Entry of the FFCL by the State Court did not violate the automatic stay that arose under Section 362(a) by the filing of the involuntary petition. The FFCL therefore was not void, compare Griffin v. Wardrobe (In re Wardrobe), 559 F.3d 932, 934-35 (9th Cir. 2009), and reflects the factual and legal determinations made by the State Court.

authorized by the court at the hearing in the matter.[12]

## DISCUSSION

The Dismissal Motion is brought on a variety of grounds, including allegations of BB&T's bad faith in filing the involuntary petition as a collateral attack on the State Court's rulings and as an effort to avoid posting a bond on appeal.  Alternatively, the Movants argue that the bankruptcy court should abstain from exercising jurisdiction on a permissive basis under Section 305.  The court having considered the record presented as well as the written and oral arguments presented, concludes that dismissal of the proceeding is appropriate for the reasons discussed below.

**I.      BB&T's Eligibility as a Petitioning Creditor in Commencing an Involuntary Petition Against Alleged Debtor R&S St. Rose.**

Section 303 governs involuntary bankruptcy cases commenced by petitioning creditors against an alleged debtor.  Section 303(b) delineates specific requirements necessary for a petitioning creditor to commence an involuntary chapter 7 or 11 bankruptcy case, including the number of creditors required to file an involuntary petition, the minimum amount in claims required and the acceptable types of claims a creditor may have against the debtor.  In relevant part, Section 303(b) states:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title–
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the ***subject of a bona fide dispute as to liability or amount***...if such noncontingent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders...by one or more of

---

[12]  Attached to the Supplemental Shumway Declaration as Exhibit "Q" is a copy of the transcript of the hearing conducted by the State Court on March 30, 2010, and a copy of the State Court Order is attached as Exhibit "R".  At the hearing on the Dismissal Motion, the court permitted the Supplemental Shumway Declaration to be filed because BB&T's counsel wanted a transcript of the entire State Court hearing on March 30, 2010 to be part of the record.

>such holders that hold in the aggregate at least $14,425 of such claims.

11 U.S.C. § 303(b) (Emphasis added). For BB&T to validly commence an involuntary proceeding against the Alleged Debtor under Section 303(b)(2), it must establish that its claim not only meets the minimum dollar requirement, but that the claim is not subject to a bona fide dispute as to liability or amount.

The Code refers to "bona fide dispute" in both Section 303(b) and (h), and although "many courts treat the terms interchangeably, each subsection actually "refer[s] to two different situations." 2 Collier on Bankruptcy ¶ 303.11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). The Code does not provide a definition of "bona fide dispute" for either Section 303(b) or (h). See Liberty Tool & Manufacturing v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Systems, Inc.), 277 F.3d 1057, 1064 (9th Cir. 2002). In this circuit, the standard for determining whether there is a bona fide dispute under Section 303(b)(1) is measured objectively: the bankruptcy court must determine "whether there is an objective basis for either a factual or legal dispute as to the validity of the debt." 277 F.3d at 1064 citing In re Busick, 831 F.2d 745, 750 (7th Cir.1987). The burden is on the petitioning creditor to show that no bona fide dispute exists as to liability or amount on their claim. Id. citing Rubin v. Belo Broad. Corp. (In re Rubin), 769 F.2d 611, 615 (9th Cir. 1985).

Although neither BB&T nor the Alleged Debtor contest that the Construction Loan debt would meet the statutory dollar requirement for petitions involving less than twelve creditors, this court must still determine whether such claim is subject to a bona fide dispute as to liability or amount.

The State Court determined that BB&T had failed to meet its evidentiary burden to show that it had acquired Colonial Bank's interest in the Construction Loan.[13]  FFCL at 25, ¶ 2.[14] The

---

[13] A file stamped copy of the FFCL appears as Exhibit "R" to the Supplemental Shumway Declaration. An unfiled copy of the FFCL appears as Exhibit "25" to the Second Supplemental Declaration of Richard F. Holley, Esq. The FFCL consists of numbered paragraphs containing findings of fact and numbered paragraph reflecting conclusions of law. In this memorandum decision,

8

State Court based its findings on its review of the Purchase and Assumption Agreement entered between BB&T and the FDIC with respect to BB&T's purchase of Colonial Bank's assets ("Agreement"). FFCL at 22, ¶¶ 129-130. The court specifically noted that the Agreement referenced two exhibits which would identify the assets excluded from BB&T's purchase and that the two exhibits were not attached to the Agreement. FFCL at 22, ¶¶ 131-132. BB&T asserted that the referenced exhibits either were not prepared or never existed. FFCL at 22, ¶ 132. The State Court also pointed to a clause in the Agreement stating that assets subject to a claim or legal proceeding would be excluded from BB&T's purchase. FFCL at 22-23, ¶¶ 133-134. The litigation between the parties in the State Court clearly existed at the time that BB&T entered into the Agreement with the FDIC. FFCL at 24, ¶¶ 139-142. Because the State Court could not determine whether the interest in the Construction Loan was included or excluded from BB&T's purchase of Colonial Bank assets under the Agreement, it concluded that BB&T had failed to meet its evidentiary burden to show that it was the successor in interest to Colonial Bank and the FDIC in regard to this particular asset. FFCL at 23-24, ¶¶ 138-144.

Under these circumstances, a bona fide dispute clearly exists as to the Alleged Debtor's liability to BB&T under the Construction Loan. BB&T failed to meet its evidentiary burden before the State Court and has offered no additional evidence in this bankruptcy proceeding that it acquired the interest in the Construction Loan. By filing the involuntary petition, BB&T essentially is seeking relief from the State Court's determination rather than through the appellate process. BB&T has indicated that it plans to appeal the State Court determination and any equitable relief from the State Court's refusal to stay foreclosure of the Property can be sought in that forum.[15]

---

references to the FFCL will be to its internal page number or, if necessary, paragraph number.

[14] Based on the transcript of the March 30, 2010 hearing before the State Court, it appears that the concern was raised well before the Rule 52 request was made by the plaintiffs.

[15] No effort has been made to substitute or join the FDIC in the involuntary petition even though many months have elapsed since the case was commenced.

9

**II.     Abstention in an Involuntary Bankruptcy Case.**

Section 305 governs "abstention" in a bankruptcy case. In relevant part, Section 305(a)(1) states:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if--
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension...

Section 305 does not explicitly refer to the terms "abstain" or "abstention." Under this provision, however, the court may dismiss a bankruptcy case or suspend proceedings in a case over which it otherwise has jurisdiction if abstention is appropriate. See generally 2 Collier on Bankruptcy, supra, ¶ 305.01. See also Wechsler v. Macke International Trade, Inc. (In re Macke International Trade, Inc.), 370 B.R. 236, 246 (B.A.P. 9th Cir. 2007). Abstention is an "extraordinary remedy." 370 B.R. at 247. In most cases, declining to exercise jurisdiction effectively equates to dismissal of the bankruptcy case. See 2 Collier on Bankruptcy, supra, ¶ 305.01.

To abstain from a bankruptcy case under Section 305(a)(1), the court must determine that both the debtor's and the creditors' interests are "better served" by such dismissal. See Macke International Trade, supra, 370 B.R. at 247, citing Eastman v. Eastman (In re Eastman), 188 B.R. 621, 625 (B.A.P. 9th Cir. 1995). Such a determination is based on the totality of the circumstances, requiring the bankruptcy court to make "specific and substantiated findings" to support its decision to abstain from, and thus dismiss, the bankruptcy case. See Macke International Trade, supra, 370 B.R. at 247. Some courts employ factors to help determine whether or not abstention is proper, but in general, the determination is a fact specific inquiry. See Profutures Special Equity Fund, L.P. v. Spade (In re Spade), 269 B.R. 225, 228 (D. Colo. 2001). Therefore, there is no "prescriptive template" that a court must employ and it should "consider any factors it deems relevant to the determination of whether it is in the best interests of the parties...Reasoned judgment based on articulated facts is the only test which the statute itself requires." Id.

Even if BB&T is eligible to petition for relief under Section 303(b), the Alleged Debtor

request that the court abstain from exercising jurisdiction by dismissing the case pursuant to Section 305(a)(1). It argues that abstention is appropriate because the case is essentially a two-party dispute involving the priority of two deeds of trust against the Property. Moreover, the Alleged Debtor contends that commencement of the involuntary proceeding essentially is a collateral attack on the determinations of the State Court and is designed to obtain a stay of the foreclosure sale without seeking relief through the state appeals process.

The Alleged Debtor is correct that dismissal of a case via abstention "may be appropriate when the bankruptcy case constitutes a two-part dispute between the debtor and a single creditor." 2 Collier on Bankruptcy, supra, ¶ 305.02[d]. In Macke International Trade, the petitioning creditor initiated a patent infringement cause of action against the alleged debtor – a business – in federal court. 370 B.R. at 241. The petitioning creditor sought and ultimately received a money judgment against the alleged debtor. Id. The alleged debtor appealed the money judgment, while its owner simultaneously began to wind up the business and assign its assets to a third party assignee; the assignee subsequently liquidated the alleged debtor's assets to disburse amongst creditors. Id. Soon thereafter, the petitioning creditor commenced an involuntary chapter 11 proceeding against the alleged debtor. The bankruptcy court, however, granted the alleged debtor's motion to dismiss pursuant to Section § 305(a)(1), noting that the matter was a "two-party dispute between [alleged debtor] and a single creditor with a long history of litigation." Id. at 243.

In this case, the Alleged Debtor and BB&T have been engaged in litigation in State Court for the past year. Although the history of the litigation is not quite as long as that in Macke International Trade, the crux of the state court litigation is the Property, and for BB&T and St. Rose Lenders, the priority on their respective deeds of trust.

BB&T argues that this case is not a simple two-party dispute for two reasons. First, it argues that the FDIC and First Southern National Bank ("FSNB"), as successor in interest to Community Bank of Nevada ("CBN"), are both potential creditors in the bankruptcy. See BB&T Opp at 15-16. BB&T alleges that the FDIC has a possible claim as successor in interest to Colonial Bank, and that

FSNB has a possible claim because CBN held a one-third participation interest in the Construction Loan.  Id.

Although the FDIC was appointed receiver for Colonial Bank following its collapse in 2009, BB&T's assertion that the FDIC may be a potential creditor in the bankruptcy as successor in interest to Colonial Bank is both speculative and circular.  If the FDIC in fact retained Colonial Bank's interest in the Construction Loan, that is, the asset did not transfer from the FDIC to BB&T pursuant to the Agreement, then the FDIC would be the proper party to pursue the claim and not BB&T.  Under that scenario, there it still would be a two-party dispute, if any, and BB&T would be the wrong party.  Additionally, BB&T has offered no evidence that the FDIC possesses any other basis for a claim against the Alleged Debtor.  The FDIC has not joined in the involuntary petition and no effort has been made to substitute FDIC into the case as the petitioning creditor.  Similarly, FSNB, as the successor in interest to CBN, has not joined in the involuntary petition. As such, BB&T's assertion that the FDIC and FSNB may be *potential* creditors of the Alleged Debtor is too attenuated and not supported by any evidence.

Alternatively, BB&T argues that it is not a two-party dispute since additional parties joined in the Dismissal Motion, i.e., Rad, Nourafchan, Forouzan and RPN.  BB&T Opp at 16.  In a two-party dispute, however, it is conceivable that there may be more than one actual party on a given side of a dispute; the relevant query is whether the interests of the multiple parties on the same side are aligned such that they constitute one party in the two-party dispute.  See, e.g., In re AMC Investors, LLC, 406 B.R. 478 (Bankr. D. Del. 2009) (finding that the matter was a two-party dispute between the alleged debtors and the petitioning creditor, even though the alleged debtors were two limited liability companies). Here, Rad, Nourafchan, Forouzan and RPN are individuals and entities affiliated with the Alleged Debtor.  Forouzan, Inc. and RPN, LLC are the Alleged Debtor's two managing members. Rad is the president and owner of Forouzan, while Nourafchan is the owner and manager of RPN, LLC. Although Rad, Nourafchan, Forouzan and RPN are additional parties in the actual sense, their interests in the bankruptcy are aligned to that of the Alleged Debtor.  Their

12

involvement in the bankruptcy case is derivative of their ownership interest in the Alleged Debtor. There has been no evidence presented that Rad, Nourafchan, Forouzan or RPN have tried to assert any other interest beyond appearances protecting their ownership interest in the Alleged Debtor. Thus, their interest and involvement in the Dismissal Motion does not lend credence to the argument that this matter is more than a two-party dispute.

The absence of a valid bankruptcy purpose may be another reason to abstain from and thus dismiss a bankruptcy case under Section 305. See Macke International Trade, supra, 370 B.R. at 247; 2 Collier on Bankruptcy, supra, ¶ 3052.02[2][b]. A successful petitioning creditor may seek the appointment of a bankruptcy trustee to conduct an investigation into an alleged debtor's assets, which under certain circumstances, may establish a valid bankruptcy purpose for an involuntary petition. See AMC Investors, supra, 406 B.R. at 488.

In AMC Investors, the petitioning creditor sued two alleged debtors in state court as guarantors on a credit agreement with an insolvent third party. 406 B.R. at 481. The petitioning creditor sought and obtained a judgement against the alleged debtors and subsequently filed a judgment lien in a second state. Id. at 481-482. It then filed an involuntary chapter 7 case against the two alleged debtors. Id. On the alleged debtors' motion to dismiss, the bankruptcy court noted that the petitioning creditor's primary, and probably sole reason for filing the involuntary bankruptcy was to "seek the appointment of a chapter 7 trustee, who [would] possess the authority to investigate and, if appropriate, pursue claims against the officers and directors of the Alleged Debtors relating to alleged fraud perpetrated" by the alleged debtors. Id. The court determined that "[w]hile such a purpose for seeking bankruptcy jurisdiction may not be proper in every case," in that case it established a valid bankruptcy purpose because pursuing potential assets in connection to the fraud claims would require "either a bankruptcy trustee or state court receiver." Id. at 489. The court reasoned that the petitioning creditor would likely not be able to pursue a cause of action in state court against the officers and directors of the alleged debtors under Delaware law, due to derivative corporate standing issues, and thus, the petitioning creditor's goal of utilizing a trustee

under bankruptcy was appropriate. Id.

In this case, BB&T argues that a trustee is necessary to investigate and provide an accounting of the Alleged Debtor, asserting that Rad and Nourafchan are possibly making insider transfers pertaining to the Alleged Debtor's bankruptcy estate. See BB&T Opp at12-13. It also maintains that a trustee will prevent such future dissipation of the estate's assets, see BB&T Opp at 13-14, and that the trustee will "serve to investigate and challenge" entities that BB&T asserts are alter-egos of the Alleged Debtor. See BB&T Opp at 14.

The Alleged Debtor concedes that it is a single asset real estate entity. See Dismissal Motion at 4. Its sole asset is the Property and it was specifically formed to conduct business in regards to the Property. Id. See also FFCL at 7, ¶ 1. Thus, the only asset that a bankruptcy trustee would have to liquidate, other than any possible avoidance claims, is the Property. The State Court determined that St. Rose Lenders has first priority in its deed of trust against the Property. FFCL at 20, ¶ 116. St. Rose Lenders has indicated that it plans to foreclose on the Property. If the Property were liquidated in Chapter 7 rather than simply abandoned, St. Rose Lenders would be paid first from the proceeds of sale and BB&T would be paid from any remaining funds thereafter. The result would be the same if St. Rose Lenders foreclosed outside of bankruptcy and any funds remained from the sale after it was paid in full. In bankruptcy, however, there would be additional administrative expenses before any funds remaining from the satisfaction of liens against the Property would be paid to unsecured creditors of the estate. Thus, there is no significant reason for the Alleged Debtor to be in bankruptcy.

Use of a bankruptcy trustee to investigate and pursue alter ego claims against insiders also is not necessary in this matter. Unlike AMC Investors, BB&T has remedies available under state law to pursue such claims in State Court against the insiders. The fact that Rad and Nourafchan are the owners of the managing members of the Alleged Debtor and also happen to be involved as parties in St. Rose Lenders is not per se determinative of misconduct. The purpose of creating a limited liability company is to create a liability shield and situations such as these are common practices of

14

business. There are no rights that can be asserted or remedies available in bankruptcy that cannot be asserted or obtained in State Court.

Bankruptcy courts also may abstain from proceeding in a case if there is an ongoing or pending state court proceeding. See 2 Collier on Bankruptcy, supra, ¶ 305.02[2][c]. In this case, the State Court litigation was pending on the date the involuntary bankruptcy petition was filed. Any further proceedings with respect to the Alleged Debtor were subject to the automatic stay. As discussed, those State Court proceedings encompassed BB&T's efforts to assert its rights, claims and remedies under the Construction Loan. Any future proceedings between the BB&T and the Alleged Debtor regarding the Property are best addressed by the State Court where the litigation between the parties originally commenced and where any appeals would be initiated. See Macke International Trade, supra, 370 B.R. at 247 ("...another forum would be more appropriate for the resolution of any lingering disputes between the parties.").

The court concludes that this matter essentially involves a two-party dispute between BB&T on one hand, and the Alleged Debtor and its managing members on the other. Additionally, there is no significant reason for the Alleged Debtor to be in bankruptcy as it is essentially a single asset debtor and little benefit would be served from liquidating its assets through Chapter 7. Adequate remedies are available to BB&T in state court, including appeals from the State Court's determinations. On balance, all parties in interest are better served by the bankruptcy court abstaining in this case under Section 305(a)(1).

## CONCLUSION

The involuntary petition will be dismissed because BB&T is not a proper petitioning creditor under Section 303(b) and because abstention is otherwise appropriate under Section 305(a)(1). A separate order has been entered concurrently herewith.

Copies noticed through ECF to:

OGONNA M. ATAMOH oatamoh@nevadafirm.com, bkecf@nevadafirm.com;sliberio@nevadafirm.com;manthony@nevadafirm.com;rholley@nevadafirm.com;vnelson@nevadafirm.com;sdwkhtecf@gmail.com;oswibies@nevadafirm.com;cmecf40@gmail.com

DOUGLAS D. GERRARD DGERRARD@GERRARD-COX.COM, ekaymedellin@gerrard-cox.com;dwaddoups@gerrard-cox.com;jberghammer@gerrard-cox.com

RICHARD F. HOLLEY rholley@nevadafirm.com, vnelson@nevadafirm.com;sliberio@nevadafirm.com;bkecf@nevadafirm.com;manthony@nevadafirm.com;oatamoh@nevadafirm.com;sdwkhtecf@gmail.com;oswibies@nevadafirm.com;cmecf40@gmail.com

KYLE O. STEPHENS Shac@lslawnv.com

U.S. TRUSTEE - LV - 7 USTPRegion17.LV.ECF@usdoj.gov

and sent via U.S. mail to:
    JULIE L. SANPEI
    400 S. FOURTH ST., 3RD FLOOR
    LAS VEGAS, NV 89101

and sent via BNC to:

    R & S ST. ROSE, LLC
    3110 S. DURANGO DRIVE, SUITE 203
    LAS VEGAS, NV 89117

    All parties on the BNC mailing list

# # #